UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSHUA HOWARD,

                    Plaintiff,

v.                                                         Case No. 20-cv-1366-pp

DANIEL BRAEMER, CHAPLAIN DONOVAN,
BRIAN FOSTER, C.O. GREEN,
CARLA HARTMAN, NIKKI KAMPHUIS,
TONY MELI, JAMES OLSON,
DYLON RADTKE, CHIEF WEISGERBER,
and JOHN AND JANE DOES,

                    Defendants.

---

**ORDER GRANTING MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT**

---

      Plaintiff Joshua Howard, an inmate at Green Bay Correctional Institution who is representing himself, filed a complaint on September 3, 2020 alleging that the defendants violated his civil rights under 42 U.S.C. §1983.[1] This decision resolves the plaintiff's motion to proceed without prepaying the filing fee, dkt. no. 2 and screens the complaint, dkt. no. 1.

**I.    Motion to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows

---

[1] The plaintiff has filed numerous cases in the district over the past several years, and this is the first of three cases the plaintiff has filed in this district in the past three and a half months. On November 30, 2020, he filed Case No. 20-cv-1768 and on December 15, 2020, he filed Case No. 20-cv-1850. On December 14, 2020, the court dismissed another of his cases, Case No. 18-cv-1830, and issued the plaintiff a strike.

1

a court to let incarcerated plaintiff proceed with his case without prepaying the civil case filing fee if he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On September 3, 2020, the court ordered that by September 24, 2020, the plaintiff must pay an initial partial filing fee of $124.00. Dkt. No. 5. On September 22, 2020, the court received from the plaintiff a motion for an extension of time to pay the initial partial filing fee, dkt. no. 7; on September 23, 2020 the court granted that motion, giving the plaintiff a deadline of November 2, 2020 by which to pay the fee, dkt. no. 8. The court received the initial partial filing fee on November 17, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint (Dkt. No. 1)**

    A.     Federal Screening Standard

Under the Prison Litigation Reform Act (PLRA), the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

2

granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720

3

(citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. Allegations in the Complaint

The plaintiff alleges five separate incidents, each involving a different set of defendants.

First, he states that on July 14, 2016, he received a memo from defendant Carla Hartman, "a member of the DOC business office staff," stating that J.L. Marcus, a DOC-approved vendor, had received a property order from the plaintiff, but "they required a return address before they could process it." Dkt. No. 1 at ¶¶1-2. The plaintiff states that he "did not receive the envelope or letter and he did not receive a Notice of Non-delivery." Id. at ¶3. The plaintiff says that he wrote to Hartman about not receiving his mail and "being afforded the due process of receiving a DOC-243 identifying the properly along with an option to mail it out." Id. at ¶4. The plaintiff says he did not receive a response. Id. The plaintiff says that he "filed a complaint"—the court assumes he means that he filed a grievance through the inmate complaint review system—but that the complaint was dismissed. Id. at ¶5. The plaintiff asserts that "by intercepting [his] mail without using the applicable forms for due process," Hartman, her supervisor defendant Nikki Kamphuis, and unidentified John and Jane Does illegally seized and deprived him of his property in violation of his rights under the First and Fourteenth Amendments. Id. at ¶6.

Second, the plaintiff alleges that between 2014 and 2017 "the Defendants repeatedly engaged in the practice of automatically barring prison newsletters only to reverse themselves weeks later." Id. at ¶9. The plaintiff

4

states that this practice resulted in only a small percentage of inmates receiving a newsletter entitled "Voices From Behind WI Prison Gates;" he says the newsletters were delivered only to those inmates who timely filed complaints about non-delivery, which delayed delivery by about a month. Id. at ¶¶ 8-9. The plaintiff also alleges that on June 14, 2014, a newsletter entitled "Bridges of Voices" "was not allowed in upon a finding that the newsletter" posed a security threat; was inconsistent with the safety, treatment and rehabilitative purposes of confinement; and contained information that would "create a clear danger of physical or mental harm to any person." Id. at ¶10. The plaintiff says that he filed a complaint and that over a month later, on July 16, 2014, the defendants reversed their position and the newsletter was delivered to the plaintiff. Id. at ¶11.

The plaintiff asserts that on November 15, 2016, the defendants barred "Voices From Behind WI Prison Gates" "upon a finding that the newsletter" discussed an activity that, if completed, would violate the law or the DOC's administrative rules; posed a security threat; and was inconsistent with the safety, treatment and rehabilitative purposes of confinement. Id. at ¶12. The plaintiff says he filed a complaint, and over a month later, on December 16, 2016, the defendants reversed their decision, allowing him to have the newsletter. Id. at ¶13. The plaintiff says that this newsletter included a complaint form for inmates to use when complaining about prison conditions. Id. at ¶14. The plaintiff says that at this point, he filed a complaint—presumably a grievance through the ICRS—"about the apparent practice," but

5

Case 2:20-cv-01366-PP   Filed 01/06/21   Page 5 of 13   Document 9

that the complaint examiner and the warden rejected it, finding that "the issue raised does not personally affect the inmate." Id. at ¶15.

The plaintiff alleges that on July 25, 2017, "an IWOC"[2] newsletter" was not delivered because it reported on "disruptive conditions at MSDF [Milwaukee Secure Detention Facility]." Id. at ¶16. The plaintiff filed a complaint, and the Division of Adult Institutions Deputy Security Chief[3] reversed "Defendant Braemer, Olson, Meli and Foster's banning." Id. at ¶17. Although the Deputy Security Chief reversed the ban, the plaintiff states he never received the newsletter. Id. at ¶18. The plaintiff alleges that in September 2017 and November 2018 issues of the IWOC newsletter were banned by the Office of the DAI Security Chief "upon a finding that they posed a threat to the security and orderly operation of the institution." Id. at ¶21. The plaintiff believes that those newsletters were banned "by Defendant Weisgerber and Does without a rational connection to a legitimate penological interest," and he alleges that this violated his First Amendment rights. Id. at ¶ 22.

Third, the plaintiff—who identifies as a practicing Buddhist—alleges that defendants Chaplain Donovan and C.O. Green violated his First Amendment rights when they did not allow the plaintiff to have a book on the Buddhist religion that included a set of prayer beads. Id. at ¶¶ 24-27. The plaintiff

---

[2] The plaintiff mentions prison advocacy groups in the complaint; while he does not say so, the court suspects that "IWOC" refers to the Incarcerated Workers Organizing Committee. https://incarceratedworkers.org/branches/milwaukee.

[3] In the section of the complaint identifying the parties, the plaintiff says that defendant Weisgerber was the DAI Security Chief. Dkt. No. 1 at page 2, ¶10.

6

explains that the DOC-contracted vendors do not offer Buddhist prayer beads, but that in September 2019, he purchased a Buddhist book that included a set of prayer beads. Id. at ¶¶23-24. He says that when the book and the prayer beads arrived at the institution, they weren't allowed because the staff hadn't properly entered the plaintiff's religion into the WICS system.[4] Id. at ¶25. The plaintiff asserts that once that error was corrected, defendants Donovan and Green refused to let him have the book or the prayer beads "because Muslim prayer beads were available in the DOC vendor catalogs and the book could not be separated from the beads." Id. at ¶26. The plaintiff asserts that this violated his First Amendment rights. Id. at ¶27.

Fourth, the plaintiff alleges that inmates at Green Bay Correctional Institution do not have the ability to send or receive mail on Saturdays, even though the U.S. Postal Service operates on Saturdays. Id. at ¶28. The plaintiff says that Green Bay has the infrastructure to allow inmates access to phones on a daily basis, but that inmates are allowed to make calls from the cell hall only twice a week "and if they have a pass during their time to use the phone, they lose the opportunity to do so." Id. at ¶29. He explains that most inmates' families live far away, so their primary means of communication is the mail. Id. at ¶30. The plaintiff alleges that defendant Dylon Radtke violates his First Amendment rights by denying him his ability to freely and reasonably

---

[4] The Wisconsin Integration Correction System, custom software that manages, among other things, inmate identification. https://www.microfocus.com/media/success-story/wisconsin_doc_ss.pdf.

communicate with other people "by sending and receiving mail and publications on Saturdays." Id. at ¶32.

Finally, the plaintiff explains that the DOC used to have an inter-institutional mail system that allowed inmates to send each other legal materials and letters. Id. at ¶33. He asserts that "most" DOC institutions allow inmates to bring their legal materials to recreation so that inmates can help each other, and he says that it is "nearly impossible to provide an opinion or assessment of an inmate's legal situation without being able to review relevant documents from their case." Id. at ¶34. The plaintiff says that it is against DOC rules to pass legal materials to each other and "paying the required postage to send voluminous materials through the mail is not feasible." Id. The plaintiff concedes that inmates can help each other at the prison library, but says that this is not feasible due to differing inmate schedules; he also indicates that there are "court deadline passes" that prevent inmates from working on anything other than the case in which they have a deadline or going to the part of the library where talking is allowed. Id. at ¶35. The plaintiff alleges that by barring inmates from bringing their legal materials to recreation, Radtke is violating the plaintiff's First Amendment rights. Id. at ¶39.

C. Analysis

In this single complaint, the plaintiff claims that eleven defendants, not including the John and Jane Does, violated his constitutional rights in five separate and distinct ways. The plaintiff is attempting to bring unrelated claims against unrelated defendants in a single suit, violating Federal Rules of

8

Civil Procedure 18(a) and 20(a). Under these rules, a plaintiff may allege in one complaint all the relevant claims he has against a single defendant. Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012) (citing George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)). A plaintiff may bring separate claims against separate defendants (claim #1 against Defendant A and claim #2 against Defendant B) only where the claims "arise out of the same transaction, occurrence, or series of transactions or occurrences," or where "any question of law or fact common to all defendants will arise in the action." Id. See also Fed. R. Civ. P. 20(a)(1)(A), (2).

The plaintiff alleges multiple claims against multiple defendants that do not arise out of the same transactions, occurrences or series of occurrences and do not have questions of law or fact in comment. The events he describes in this single complaint span a period from 2014 through 2019. One claim involves a failure to deliver mail to the plaintiff. Another claim concerns various Green Bay staff banning newsletters over a four-year span. Another claim alleges that that Green Bay's chaplain and a correctional officer denied him a book about Buddhism and Buddhist prayer beads. Yet another claim complains that Green Bay does not allow mail on Saturdays. The final claim takes issue with Green Bay's policy barring inmates from bringing legal materials to recreation.

Though all these claims concern alleged violations of the plaintiff's First Amendment rights, the First Amendment is not a question of law common to all defendants. The First Amendment issues in each of the five fact scenarios

9

are different. The claims regarding receipt and access to mail involve the Free Speech Clause of the First Amendment. The claim about the prayer beads involves the Free Exercise of Religion Clause. The claim about bringing legal materials to recreation involves the right to petition for redress of grievances (an "access to courts" claim). Even the claims involving access to mail or newsletters involve different defendants and different timeframes. The Seventh Circuit requires this court to reject such "buckshot complaints." George, 507 F.3d at 607.

The court will give the plaintiff the opportunity to amend his complaint. The plaintiff must use the court's standard amended complaint form (the court is enclosing a blank copy). He must either select one defendant and put in the complaint all his claims against that one defendant, or select one occurrence or series of occurrences and include all the defendants involved in that occurrence. The plaintiff must file a separate complaint for each separate series of occurrences involving the same defendants.

The plaintiff must put the case number for this case—20-cv-1366—on the line under "Case Number." He must list the name of each of the defendants involved in the occurrence in the caption of the complaint. The amended complaint takes the place of the prior complaint and must be complete in itself, so the plaintiff cannot simply say, "Look at my first complaint for further information." See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1056-57 (7th Cir. 1998). He must describe in the space provided the who, what, when, where and why information about the

10

occurrence he has chosen to pursue in this case. The plaintiff should be able to fit all the relevant facts into the space provided on the form complaint. If not, he may use up to three additional pages, double-spaced, to include the remaining facts. The plaintiff does not need to cite case law or provide legal argument. He needs only to tell the court who violated his constitutional rights, when, where, how and, if he knows, why. If the plaintiff files the amended complaint by the deadline listed below, and it complies with this order, the court will screen it under 28 U.S.C. §1915A

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that if the plaintiff wishes to amend his complaint, he must do so in time for the court to *receive* the amended complaint by the end of the day on **February 12, 2021**. If the court does not receive the amended complaint by the end of the day on February 12, 2021, the court will dismiss the case for the plaintiff's failure to diligently prosecute it, as allowed under Civil Local Rule 41(c).

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$226.00** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2).

The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court.[5] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of

---

[5] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

12

court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 6th day of January, 2021.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**