UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSHUA HOWARD,

                  Plaintiff,

v.                                              Case No. 20-cv-1366-pp

DANIEL BRAEMER, BRIAN FOSTER,
TONY MELI, JAMES OLSON,
CHIEF WEISGERBER and DOES,

                  Defendants.

---

**ORDER SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A**

---

Joshua Howard, an inmate at the Green Bay Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal law. The court screened the complaint and determined that it violated Federal Rules of Civil Procedure 18 and 20 because the plaintiff alleged multiple claims against different defendants that did not arise out of the same transactions or occurrences and did not have questions of law or fact in common. Dkt. No. 9 at 9. The court gave the plaintiff an opportunity to file an amended complaint that complied with Rules 18 and 20. Id. at 10-11. The plaintiff has filed his amended complaint, dkt. no. 10, and this order screens it under 28 U.S.C. §1915A.

**I.    Screening the Amended Complaint**

    A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a

governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

B.   The Plaintiff's Allegations

The amended complaint names as defendants Daniel Braemer, who was employed as a sergeant at Waupun Correctional Institution; Brian Foster, who was Waupun's warden; Tony Meli, who was the security director at Waupun; James Olson, who worked at Waupun; Chief Weisgerber, who was the Division

of Adult Institution (DAI) security chief; and Doe defendants. Dkt. No. 10 at 1-2.

The plaintiff alleges that the defendants violated his First Amendment rights between 2014 and 2017, when he was confined at Waupun. Id. at 2. The plaintiff asserts that during that time, the defendants "repeatedly engaged in the practice of automatically barring prisoner advocacy newsletters only to reverse themselves a few weeks later when the grounds for their decision were challenged." Id. He says that this practice benefitted the defendants because it greatly reduced the number of issues of newsletters allowed into the prison because they were delivered only to those incarcerated persons who filed timely complaints, and it delayed any delivery by about a month. Id. at 3.

Specifically, the plaintiff alleges that on June 14, 2014, the defendants did not allow an advocacy newsletter (Bridges of Voices) on the grounds that the newsletter, (1) posed a threat to the security, orderly operation, discipline or safety of the institution, (2) was inconsistent with or posed a threat to the safety, treatment or rehabilitative goals of inmates and (3) contained information that, if communicated, would create a clear danger of physical or mental harm to any person. Id. The plaintiff allegedly filed a complaint about the non-delivery and on July 16, 2014, the defendants reversed their objections without explanation and allowed him to receive the newsletter. Id.

The plaintiff alleges that about two and a half years later, on November 15, 2016, the defendants barred an advocacy newsletter (Voices from Behind Wisconsin Prison Gates) because they asserted that its content (1) concerned

3

an activity which, if completed, would violate the laws of Wisconsin, the United States or the Administrative Rules of the Department of Corrections, (2) posed a threat to the security, orderly operation, discipline or safety of the institution and (3) was inconsistent with or posed a threat to the safety, treatment or rehabilitative goals of the inmates. Id. The plaintiff says he filed a complaint and on December 16, 2016, the defendants reversed their position without explanation and allowed him to receive the newsletter. Id.

The plaintiff says that he noticed a pattern after the second non-delivery and subsequent reversal. Id. at 4. He alleges that he filed a complaint about the "apparent practice," but defendant Foster rejected the complaint on the ground that the issue raised did not personally affect the plaintiff. Id. The plaintiff alleges that defendants Olson, Braemer, Meli and Foster were responsible for implementing "the above DOC-wide practice" at Waupun. Id. He states that the practice of initially banning publications without any legitimate penological justification in order to delay and restrict access to the newsletter violated his First Amendment rights. Id.

Next, the plaintiff alleges that on July 25, 2017, an advocacy newsletter was not delivered because it reported on "disruptive conditions at MSDF [Milwaukee Secure Detention Facility]." Id. The plaintiff says that he complained about the Waupun defendants' decision to ban the newsletter, and the DAI's deputy security chief reversed the decision. Id. According to the plaintiff, despite the reversal, the Waupun defendants did not send him the newsletter. Id.

4

The plaintiff alleges that defendant Weisgerber banned the September 2017 and November 2018 issues of an advocacy newsletter upon finding that their delivery posed a threat to the security and orderly operation of the institution. Id. at 5. The plaintiff says that Weisgerber and the Doe defendants banned the newsletter without a rational connection to a legitimate penological interest. Id. He claims that Weisgerber and Foster implemented an unconstitutional practice of denying publications that reported on DOC conditions without a good faith belief that it was necessary to further a legitimate penological interest. Id.

For relief, the plaintiff seeks nominal, compensatory and punitive damages. Id. He also seeks declaratory relief. Id.

C. Analysis

Incarcerated persons have a constitutionally protected interest in their incoming and outgoing mail correspondence. Van den Bosch v. Raemisch, 658 F.3d 778, 785 (7th Cir. 2011) (citing Jackson v. Frank, 509 F.3d 389, 391 (7th Cir. 2007)). Those outside of prison have an interest in corresponding with incarcerated persons. Id. (citing Thornburgh v. Abbott, 490 U.S. 401, 408 (1989) (reaffirming that "publishers who wish to communicate with those who, through subscription, willingly seek their point of view have a legitimate First Amendment interest in access to prisoners.")). But prison officials may restrict the correspondence of incarcerated persons if those restrictions are "reasonably related to legitimate penological interests." Id. (quoting Turner v. Safley, 482 U.S. 78, 89, (1987), Thornburgh, 490 U.S. at 413 (adopting the Turner

5

reasonableness standard for regulations on incoming publications sent to prisoners)). Legitimate penological interests include crime deterrence, rehabilitation of incarcerated persons and protecting the safety of prison guards and incarcerated persons. Id. (citing Singer v. Raemisch, 593 F.3d 529 (7th Cir. 2010) (affirming summary judgment in favor of prison officials who restricted role-playing game that mimicked the organization of gangs); May v. Libby, 256 F. App'x. 825 (7th Cir. 2007) (affirming grant of judgment as a matter of law for prison officials who confiscated incarcerated person's internal grievance form against the prison because it was not unreasonable to perceive letter as a threat); Kaufman v. McCaughry, 419 F.3d 678, 685 (7th Cir. 2005) (affirming district court's dismissal of prison officials who refused to distribute publications deemed pornographic)).

"While the burden of persuasion is on the prisoner to disprove the validity of a regulation, . . . defendants must still articulate their legitimate governmental interest in the regulation." Van den Bosch, 658 F.3d at 786 (citing Overton v. Bazzetta, 539 U.S. 126, 132 (2003) and Turner, 482 U.S. at 89). And courts must accord "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Id. (quoting Overton, 539 U.S. at 132).

The plaintiff has not stated a plausible claim for relief that his constitutional rights were violated based on his allegations that in 2014, and

then again in 2016, the defendants barred receipt of certain advocacy newsletters. The plaintiff says he complained about not receiving the newsletters, the defendants reversed their decisions to disallow them and he received them. The defendants did not violate the plaintiff's First Amendment rights because he received the newsletters. He cannot maintain a First Amendment claim against the defendants based on these allegations.

On the other hand, the plaintiff's allegations that the DAI deputy security chief reversed the Waupun defendants' decision not to deliver a newsletter on July 25, 2017, but that the Waupun defendants did not allow him to receive the newsletter, implicates the plaintiff's First Amendment rights against the Waupun defendants (Braemer, Foster, Meli, Olson). The plaintiff's allegations that defendant Weisgerber and the Doe defendants banned the September 2017 and November 2018 issues of an advocacy newsletter implicate his First Amendment rights; the plaintiff does not allege that he ever received these issues.

The plaintiff's claim against the Waupun defendants (Braemer, Foster, Meli and Olson) and his claim against Weisgerber and the Doe defendants may not proceed in the same case. As the court previously advised the plaintiff, while multiple claims against a single party are acceptable, a plaintiff cannot bring unrelated claims against different defendants in the same case. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). A plaintiff may join multiple defendants in a single case only if the plaintiff asserts at least one claim against each defendant that arises out of the same

7

events or incidents and involves questions of law or fact that are common to all the defendants. Fed. R. Civ. P. 20(a)(2); George, 507 F.3d at 607; Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012) (joinder of multiple defendants in one case "is limited to claims arising from the same transaction or series of related transactions"). While the plaintiff's claims involve the First Amendment, they do not arise out of the same events or incidents. Thus, they belong in separate cases.

  The court will give the plaintiff a chance file another amended complaint, in which he may select one of the two above-described claims upon which to proceed in this case. The plaintiff may not proceed on any other claims in this case. If the plaintiff does not file his amended complaint by the deadline set below, the court will decide for him and allow him proceed on his claim against Braemer, Foster, Meli and Olson, dismissing the improperly joined defendants.

  The court is enclosing a copy of its amended complaint form. The plaintiff must write the word "Second" above the words "Amended Complaint" on the first page. He must list the case number for this case on the first page. He must list the defendants he wants to sue in the caption of the amended complaint. The amended complaint takes the place of the prior complaints and must be complete in itself; the plaintiff may not refer the court back to his original or amended complaint, rather than repeating in the amended complaint any of the facts from the original and amended complaint that are necessary to his claims.

## II. Conclusion

The court **ORDERS** that the plaintiff may file a second amended complaint that complies with the instructions in this order in time for the court to receive it by the end of the day on **June 4, 2021**. If the court does not receive a second amended complaint from the plaintiff by the end of the day on June 4, 2021, the court will allow him to proceed on his First Amendment claim against defendants Braemer, Foster, Meli and Olson and will dismiss the other defendants.

The court will include an amended complaint form along with this order.

Dated in Milwaukee, Wisconsin, this 18th day of May, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**