JOSHUA HOWARD,

                Plaintiff,

v.                                               Case No. 20-cv-1366-pp

DANIEL BRAEMER, BRIAN FOSTER,
TONY MELI and JAMES OLSON,

                Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 30) AND DISMISSING CASE**

      Joshua Howard, who is confined at the Fox Lake Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983. The court screened his second amended complaint and allowed him to proceed on a First Amendment claim based on allegations that the defendants did not allow the plaintiff to receive a newsletter sent to him in July 2017 when he was incarcerated at Waupun Correctional Institution. Dkt. Nos. 11, 18. The defendants have filed a motion for summary judgment. The court will grant that motion and dismiss the case.

**I.    Procedural Background**

      The court screened the original complaint and determined that it violated Federal Rules of Civil Procedure 18 and 20 because the plaintiff alleged multiple claims against different defendants that did not arise out of the same transactions or occurrences and did not have questions of law or fact in common. Dkt. No. 9 at 9. The court gave the plaintiff an opportunity to file an amended complaint that complied with Rules 18 and 20. Id. at 10-11.

1

The plaintiff filed an amended complaint. Dkt. No. 10. At screening, the court found that the plaintiff had stated First Amendment claims against two sets of defendants; it gave the plaintiff the opportunity to choose which defendants he wanted to pursue by filing a second amended complaint. Dkt. No. 11 at 7-8. Specifically, the court found that (1) the plaintiff's allegations that although the Division of Adult Institutions ("DAI") deputy security chief reversed the Waupun defendants' (Braemer, Foster, Meli, Olson) decision not to deliver a newsletter on July 25, 2017, the Waupun defendants had not allowed him to receive the newsletter, implicated the plaintiff's First Amendment rights as to the Waupun defendants, and (2) the plaintiff's allegations that defendant Weisgerber and the Doe defendants banned the September 2017 and November 2018 issues of an advocacy newsletter implicated his First Amendment rights, given that the plaintiff did not allege that he received these issues.[1] Id. The court's screening order directed the plaintiff to file a second amended complaint selecting one of the two above-described claims upon which to proceed. Id. at 8.

The plaintiff filed a second amended complaint against the Waupun defendants (Braemer, Foster, Meli, Olson); that is the operative complaint. Dkt. No. 18. The court screened the second amended complaint and allowed the plaintiff to proceed against the Waupun defendants in their individual capacities based on his allegations that although the DAI deputy security chief

---

[1] The court found that the plaintiff had failed to state a claim for relief based on his allegations that in 2014, and then again in 2016, the defendants had barred his receipt of certain advocacy newsletters; the court found that he could not maintain a First Amendment claim as to those newsletters because he conceded that he had received them. Dkt. No. 11 at 6-7. The plaintiff filed a motion for reconsideration regarding the dismissal of these claims, dkt. no. 12, and the court denied the motion, dkt. no. 17.

2

reversed the Waupun defendants' decision refusing to deliver a newsletter on July 25, 2017, the Waupun defendants did not allow him to receive the newsletter. Dkt. No. 23 at 2.

## II. Facts

The Milwaukee chapter of Industrial Workers of the World formed a committee known as the Incarcerated Workers Organizing Committee (IWOC) which focused on the treatment of Wisconsin incarcerated individuals and their conditions of confinement. Dkt. No. 46 at ¶1. IWOC issued a newsletter titled Voices from Behind Wisconsin Prison Gates ("Voices"), which typically published anonymous excerpts of letters from individuals housed in Wisconsin prisons. Id. at ¶2.

### A. Non-Delivery of Newsletter in November 2016[2]

In September of 2016, the IWOC published their second issue of Voices and sent a copy to the plaintiff, which was processed by the post office on November 8, 2016. Dkt. No. 46 at ¶3. On November 11, 2016, the plaintiff received a "DOC [Department of Corrections]-243 Notice of Non-delivery of Mail," informing him that the second issue of Voices would not be delivered to him because: "a.) Item concerns an activity, which if completed would violate the laws of Wisconsin, the United States or the Administrative Rules of the Department of Corrections, and b.) Item poses a threat to the security, orderly operation, discipline or safety of the institution." Id. at ¶4. Three days later, the plaintiff filed an administrative complaint in which he stated that the

---

[2] The plaintiff's Proposed Finding of Facts include facts related to the non-delivery of a newsletter in November 2016. The court did not allow the plaintiff to proceed on a claim based on the non-delivery of a newsletter in November 2016 because after the plaintiff filed an administrative grievance, he received the newsletter. Dkt. No. 11 at 6-7.

3

"newsletter does not pose a threat or concern an activity which would violate laws or DOC rules." Id. at ¶5.

On November 23, 2016, the institution complaint examiner ("ICE") refused to accept the complaint and instructed the plaintiff first to attempt to resolve the issue by contacting Meli (the security director at Waupun), which the plaintiff did. Id. at ¶6. Meli replied that the "publication was reviewed and determined to be a not allowable publication." Id. at ¶7.

The plaintiff resubmitted his administrative complaint and on December 8, 2016, the ICE recommended affirming the complaint after noting that the DAI security chief had reversed the decision to deny the publication. Id. at ¶8. Two days later, Foster (the Warden at Waupun) affirmed the complaint. Id. When the plaintiff did not receive a copy of the newsletter in the days following the decision, he wrote to "property" and the next day, his request was returned with a copy of the newsletter. Id. at ¶9.

That same day, the plaintiff filed an administrative complaint in which he stated, "WCI has an unconstitutional practice of not letting in prisoners' rights newsletters by claiming that they constitute a violation of law or a safety risk to the institution." Id. at ¶10. The ICE returned the complaint, seeking clarification of the issue and asking the plaintiff, "what specifically was denied to you, by whom and when?" Id. at ¶12. The plaintiff resubmitted the complaint and replied that on two occasions he had received a non-delivery notice for prison advocacy newsletters only to have them allowed without explanation as soon as he filed a complaint. Id. On December 22, 2016, the ICE again returned the complaint, asking whether there was a current issue and requesting the date of occurrence. Id. at ¶13. The plaintiff refiled his complaint along with a note answering the questions: "The date of occurrence

4

is 12.10.16 when I was informed that security had reversed its position on the IWW newsletter. That action of deeming it a security threat only to reverse it if anyone complains is the current issue—security never had a legitimate reason to deny delivery." Id.

On December 30, 2016, the ICE recommended that the complaint be rejected because the issue raised did not personally affect the plaintiff. Id. at ¶14. The plaintiff filed an appeal of the rejection, stating that the "unconstitutional policy of intentionally not allowing the delivery of publications without sufficient cause personally affects me considering that it has been applied to me twice and delaying delivery for several weeks each time." Id. at ¶15. Three days later, Foster affirmed the rejection of the complaint. Id. at ¶16.

B.  Non-Delivery of Newsletter at Issue in this Case

The plaintiff's claim is that the defendants failed to deliver him a newsletter while he was incarcerated at Waupun. Dkt. No. 32 at ¶¶1-2. In July 2017, Frank Little, a member of IWOC, sent the plaintiff a four-page letter which included IWOC updates as to a branch building, assigned committee roles and motions. Dkt. No. 46 at ¶17. The IWOC newsletter was postmarked July 8, 2017, and the defendants informed the plaintiff of the mailing on July 25, 2017. Id. at ¶18; Dkt. No. 32 at ¶2.

Captain Robert Rymarkewicz (not a defendant) initially disallowed delivery of the newsletter to the plaintiff because Rymarkeqicz thought the newsletter discussed disrupting operations at Milwaukee Secure Detention Facility ("MSDF"), another Wisconsin DOC institution. Dkt. No. 32 at ¶3. On July 25, 2017, the plaintiff received a "DOC-243 Notice of Non-delivery of Mail," informing him that the mail he had received from Frank Little would not be

5

delivered to him. Dkt. No. 46 at ¶19. In the margin of the DOC-243, there is a written notation stating that delivery was "denied due to discussion of disruption of operations at MSDF per Captain Rymarkewicz." Dkt. No. 46-1 at 37. Under the section asking the author to identify the reason for the non-delivery of the mail, the author marked the box next to "Item concerns an activity, which if completed would violate the laws of Wisconsin, the United States or the Administrative Rules of the Department of Corrections." Id. The plaintiff indicates that as it related to MSDF, the newsletter stated as follows:

> MSDF Shutdown Campaign event will be on Thursday, Facebook live coverage desired. Then we hold the regular MSDF picket, July 23rd. JL will head this up, since B (who normally does it) will be out-of-town. . . .
>
> Tasks assigned are as follows. . . . Head up the July 23rd MSDF picket.

Dkt. No. 46 at ¶20.

The plaintiff submitted complaint WCI-2017-19920 to challenge the non-delivery of the newsletter. Dkt. No. 32 at ¶4. He stated that the "newsletter does not discuss or promote a future violation of rules or laws—it reports on conditions at MSDF which is allowed under the 1st Amendment." Dkt. No. 46 at ¶22. On July 28, 2017, the ICE refused to accept the complaint and instructed the plaintiff to attempt to resolve the issue by contacting Braemer (who was a sergeant at Waupun). Id. at ¶23. The plaintiff contacted Braemer who replied that "per Capt. Rymarkewicz the letter is not allowed." Id. The plaintiff resubmitted the complaint along with Braemer's response. Id.

On August 11, 2017, the ICE recommended affirming the plaintiff's complaint and stated: "DAI Deputy Security Chief has reviewed the letter in question and has deemed it allowable. A copy of the complaint will be sent to Sgt. Braemer in order to facilitate delivery." Dkt. No. 32 at ¶5; Dkt. No. 46 at

6

¶24. The next day, Foster—the warden at Waupun and the reviewing authority—affirmed the ICE's recommendation to affirm the complaint. Dkt. No. 32 at ¶6; Dkt. No. 46 at ¶25. The Reviewing Authority's Decision notes that a copy of the decision was emailed to Braemer, Olson (who was a captain at Waupun, Dkt. No. 36 at ¶3) and Meli. Id.

When the plaintiff did not receive a copy of the letter, he wrote to the property room on August 20, 2017 asking for a copy, but he did not receive a response. Id. at ¶28. On September 11, 2017, the plaintiff submitted complaint WCI-2017-25148 in which he stated that Waupun personnel had yet to deliver him Frank Little's letter. Dkt. No. 32 at ¶7; Dkt. No. 46 at ¶30. Four days later, the ICE refused to accept the complaint and informed the plaintiff that per DOC 310, he should write to Foster, who was the reviewing authority. Id. at ¶31. The plaintiff wrote to Foster and Foster forwarded the request to Braemer who replied, "I do not see anything down here with the ICE #19920. It was returned to you through institution mail over 1 month ago." Id. at ¶¶32-33.

The plaintiff resubmitted his complaint along with Braemer's response and stated that he never had received the letter. Id. at ¶34. On October 3, 2017, the ICE emailed Braemer and Olson and attached the record of complaint #19920, stating: "Inmate claims he never got this letter back. Sgt. states it was returned via institution mail a month ago. Do we have proof of this? Thank you." Id. at ¶35. The ICE (Muenchow, not a defendant) discussed Braemer's response to his email in his October 6, 2017 recommendation that the complaint be affirmed:

> Sgt. Braemer reports inquiring to inmate Howard as to the date of the letter in question as there are more than one letter from the same sender. He believed the letter was issued. There is another letter in the Property Department that has now been clarified with Sgt. Braemer as the letter that is the subject of this complaint. Sgt.

7

> Braemer will issue this letter. Recommendation is made to affirm solely to acknowledge the remedy did not occur within 30-days due to the confusion. No further remedial action is necessary as the letter is being issued.

Id. at ¶37. Foster affirmed complaint #25148. Id. at ¶38.

The defendants failed to deliver the IWOC letter even after the "confusion" discussed in complaint #25148 was cleared up. Id. at ¶41. The ICE had scanned the letter into the record of complaint #19920 and the first time the plaintiff saw the letter was in 2022 during discovery when he received a copy of the record of complaint #19920. Id.

Braemer's duties at Waupun during the relevant period involved helping sort between 800 and 1,200 pieces of mail per day into six separate baskets—one for each of the six cell units at Waupun. Dkt. No. 32 at ¶10. Each piece of mail would go into the basket corresponding to the incarcerated individual's cell unit and the baskets were then delivered to the various cell units. Id. at ¶11. Once there, correctional officers passed out the individual parcels to the recipients. Id. at ¶12. Braemer has no recollection of the letter at the heart of this lawsuit. Id. at ¶13. The position he had in Waupun's mail supply chain meant that his job would have been to place the letter in the basket corresponding to the unit where the plaintiff was housed. Id. at ¶14. Correctional officers working in that unit then would hand the letter to the plaintiff. Id. at ¶15.

The plaintiff asserts that after complaint #25148 was affirmed and it was confirmed that the newsletter had not been delivered to the plaintiff, Meli "was asked" to describe any steps Meli took to ensure delivery; the plaintiff says that Meli replied that he "would have contacted both Olson and Braemer to ensure the letter was delivered." Dkt. No. 46 at ¶39 (citing discovery response). The plaintiff also asked Braemer to describe any steps he took to ensure delivery;

8

the plaintiff says that Braemer responded that he "would have checked the ICI hold box to make sure that the letter was not there." Id. at ¶40 (citing discovery response).

According to the defendants, Braemer had no reason to believe this procedure wasn't followed for the routing and ultimate delivery of the newsletter. Dkt. No. 32 at ¶16.[3] Meli and Olson assert that they played no role in the decision to allow delivery of the newsletter or its actual delivery. Id. at ¶17. Foster's only role was affirming the ICE's recommendation to deliver the newsletter to the plaintiff. Id. at ¶18.

### III. Analysis

#### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

---

[3] The plaintiff states that Braemer had several reasons to believe that this procedure wasn't followed: the plaintiff wrote to property on August 20, 2017 when he did not receive the newsletter after thirty days; Foster forwarded the plaintiff's second request to him on September 18, 2017; the ICE confirmed that after his October 3, 2017 email to Braemer, he acknowledged that this procedure had not been followed; and after complaint #25148 was affirmed Meli would have contacted him about the non-delivery. Dkt. No.45 at ¶16.

9

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.  Discussion

The defendants contend that the non-delivery of one letter does not amount to a constitutional violation, dkt no. 31 at 4-6; there is no evidence that the defendants intentionally kept the newsletter from the plaintiff, id. at 6-8; and they are entitled to qualified immunity, id. at 8-9.

The plaintiff responds that, contrary to the defendants' description, the defendants did not simply accidentally lose a single piece of mail; rather, after the plaintiff filed multiple complaints against the defendants for arbitrarily not delivering prisoner advocacy newsletters, they refused to deliver the subject newsletter despite several contacts and two complaint affirmations ordering them to do so. Dkt. No. 44 at 2. The plaintiff states that the circumstances of the initial decision to deny the newsletter are suspicious and appear to have been a pretext to allow the defendants to withhold the newsletter until the conclusion of two outside protests, in an effort to hamper the level of attendance and effectiveness of the protests. Id. According to the plaintiff,

10

based on the circumstances and delay involved in the processing of the non-delivery notice for the newsletter, a reasonable jury could find that the defendants did not have a legitimate concern about its content and flagged the newsletter only to allow them to hold onto it until the information was stale. Id. at 4-5. The plaintiff also contends that each defendant was personally involved in and aware of the non-delivery, had access to the newsletter and intentionally failed to act. Id. at 5-11. The plaintiff asserts that the defendants' failure to deliver the newsletter could be viewed as an extension of, and in support of, the initial misconduct of denying the newsletter to foil anti-DOC protests. Id. at 6.

Incarcerated persons have a constitutionally protected interest in their incoming and outgoing mail correspondence. Van den Bosch v. Raemisch, 658 F.3d 778, 785 (7th Cir. 2011) (citing Jackson v. Frank, 509 F.3d 389, 391 (7th Cir. 2007)). But prison officials may impose restrictions on incarcerated persons' correspondence if those restrictions are "reasonably related to legitimate penological interests." Id. (quoting Turner v. Safley, 482 U.S. 78, 89, (1987), Thornburgh v. Abbott, 490 U.S. 401, 413 (1989) (adopting the Turner reasonableness standard for regulations on incoming publications sent to prisoners)). Legitimate penological interests include deterrence of crime, rehabilitation of incarcerated persons and protection of the safety of prison guards and incarcerated persons. Id. (citing Singer v. Raemisch, 593 F.3d 529 (7th Cir. 2010) (affirming summary judgment in favor of prison officials who restricted role-playing game that mimicked the organization of gangs); May v. Libby, 256 F. App'x. 825 (7th Cir. 2007) (affirming grant of judgment as a matter of law for prison officials who confiscated incarcerated person's internal grievance form against the prison because it was not unreasonable to perceive letter as a threat); Kaufman v. McCaughtry, 419 F.3d 678, 685 (7th Cir. 2005)

11

(affirming district court's dismissal of prison officials who refused to distribute publications deemed pornographic)).

Captain Rymarkewicz, who is not a defendant, initially disallowed delivery of the letter because he thought it discussed a plan to disrupt operations at MSDF. After the plaintiff challenged that decision by filing his first administrative complaint (#19920), the DAI deputy security chief said the plaintiff could have the newsletter. The ICE recommended affirming #19920 and sent a copy to Braemer to facilitate delivery; Warden Foster accepted the ICE's recommendation, affirmed #19920 and sent a copy to Braemer, Olson and Meli. But this case is not about Captain Rymarkewicz's initial decision not to allow delivery of the letter; it is about defendants' failure to *deliver* the newsletter after Foster's August 12, 2017 decision affirming #19920.

Because the plaintiff's claim involves the non-delivery of a single letter, it does not implicate the plaintiff's constitutional rights under the First Amendment. See Schroeder v. Drankiewicz, 519 F. App'x 924, 947 (7th Cir. 2013) (citing Zimmerman v. Tribble, 226 F.3d 568, 572-73 (7th Cir. 2000) (concluding that an alleged delay in delivering mail on one occasion failed to state First Amendment claim); Rowe v. Shake, 196 F.3d 778, 782 (7th Cir.1999) (concluding that allegations of "relatively short-term and sporadic" delays in delivering mail failed to state First Amendment claim); Ahlers v. Rabinowitz, 684 F.3d 53, 64-65 (2d Cir. 2012) (concluding that eleven instances of delayed or withheld mail over four months did not state First Amendment claim); Deleon v. Doe, 361 F.3d 93, 94 (2d Cir. 2004) (concluding that prison staff's loss of letter containing birthday card did not state a First Amendment claim). The plaintiff has not stated a constitutional claim for a violation of his right to receive mail because he has not established that there

was an ongoing practice of prohibiting him from receiving his mail or that he suffered any harm from not receiving the single piece of mail.[4] See Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003); see also Rasheen v. Adner, 356 F. Supp. 3d 222, 234 (N.D. N.Y. 2019) (dismissing case where incarcerated individual "alleged that [defendant] intercepted one piece of mail"). The defendants are entitled to summary judgment because the non-delivery of one piece of mail does not rise to the level of a constitutional violation.

Even if the non-delivery of one piece of mail implicated the plaintiff's constitutional rights, he has not established that any defendant intentionally failed to deliver the letter to him. After the plaintiff filed his second administrative complaint (#25148), the ICE emailed Braemer and Olson and attached the record of the first complaint (#19920), stating: "Inmate claims he never got this letter back. Sgt. states it was returned via institution mail a month ago. Do we have proof of this? Thank you." Id. at ¶35. The ICE discussed Braemer's response to his email in his October 6, 2017 recommendation that the complaint be affirmed:

> Sgt. Braemer reports inquiring to inmate Howard as to the date of the letter in question as there are more than one letter from the same sender. He believed the letter was issued. There is another letter in the Property Department that has now been clarified with Sgt. Braemer as the letter that is the subject of this complaint. Sgt. Braemer will issue this letter. Recommendation is made to affirm solely to acknowledge the remedy did not occur within 30-days due to the confusion. No further remedial action is necessary as the letter is being issued.

---

[4] To the extent that the plaintiff contends that the non-delivery of his mail stemmed from a practice of not delivering prison advocacy newsletters, the court did not allow the plaintiff to proceed on a policy or practice claim because his allegations that the delays in delivering one newsletter in 2014 and another one in 2016 were not sufficient to support such a claim. Dkt. No. 17 at 3-5.

13

Id. at ¶37. Foster affirmed complaint #25148. Id. at ¶38. It is undisputed that the plaintiff did not receive the letter until after he filed this case.

Despite the ICE's recommendation that Braemer "will issue this letter,' Braemer's job duties did not include delivering mail. His duties included daily sorting of 800 to 1,200 pieces of mail into six bins, after which correctional officers would deliver the mail to incarcerated individual's cells. Presumably, after receiving notification that he should issue the letter, Braemer would have sorted the letter into the proper bin for delivery to the plaintiff. While it is undisputed that the plaintiff did not receive the letter until after he filed this case, he has not alleged (or submitted evidence showing) that he notified Braemer (or anyone else) that after Foster affirmed #25148, the plaintiff did not receive the letter. The plaintiff has not shown that Braemer purposefully failed to deliver the letter to him.

Nor has the plaintiff shown that Olson, Meli or Foster failed to deliver the letter to him. It is undisputed that Meli and Olson played no role in the decision to allow delivery of the newsletter or its actual delivery. Dkt. No. 32 at ¶17. The plaintiff contends that Olson is liable because Olson worked in the mailroom and received a copy of the plaintiff's administrative complaints, an email from the ICE regarding #25148 and the letter. Dkt. No. 44 at 6-7. The record does not support a finding that Olson, who worked as the supervisor of the property department, dkt. no. 36 at ¶3, had the responsibility to deliver the letter to the plaintiff, and the fact that he was copied on administrative complaint decisions does not make him liable for the failure to deliver the letter. Likewise, Meli was copied on the affirmation of the plaintiff's second administrative complaint (#25148), but that does not mean that he was liable for the non-delivery of the letter to the plaintiff. Section 1983 makes public

14

employees liable "for their own misdeeds but not for anyone else's." Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009); see George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007).

It is undisputed that Foster's sole role was affirming the ICE's recommendation to deliver the newsletter to the plaintiff. Dkt. No. 32 at ¶18. The plaintiff contends that under Wis. Admin. Code §DOC 310.15, Foster was responsible for implementing the remedy addressing complaint #19920 (to deliver the letter), and that when the plaintiff wrote Foster on September 15, 2017 about not receiving the newsletter, Foster forwarded the response to Braemer and failed to follow through personally. Dkt. No. 44 at 10. According to the plaintiff, "It was only on 10.06.17, when ICE Meunchow challenged Braemer's unsupported response that the newsletter had been delivered that it came to light that Braemer had been confused about which newsletter was at issue and that he was mistaken about the newsletter having already been sent to the Plaintiff." Id. at 10-11. The plaintiff argues that Foster took no steps to ensure delivery and that his failure to act, "despite his statutory authority to do so," was intentional and motivated by a desire to prevent the plaintiff from reading mail that was critical of the DOC and published by a group with the declared intention of closing DOC facilities. Id.

Wis. Admin. Code §DOC 310.15 (2002)[5] provides: "(1) The Department shall implement an affirmed decision within 30 working days from the date of decision. (2) If an affirmed complaint has not been implemented within 30 working day, the complainant may directly inform the decision-maker in writing of the failure to implement the decision." The plaintiff seems to be

---

[5] The court cites to the 2002 version of the regulation that was in effect in 2017.

15

arguing that Foster violated §DOC 310.15(1) because he didn't implement the affirmed decision within thirty working days from the date the plaintiff's administrative complaint was affirmed. The regulation states, however, that the "Department"—not the warden—must implement an affirmed decision. Even if the regulation directed the warden to implement the decision, that would not necessarily preclude the warden from directing another responsible staff member to implement the affirmed decision, *i.e.*, to deliver the letter. Finally, even if the plaintiff had established that Foster violated a provision of the Wisconsin Administrative Code by failing to ensure that the plaintiff received the letter, violations of prison regulations, standing alone, do not constitute a violation of the Constitution. See Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003).

A reasonable factfinder could not conclude that the defendants violated the plaintiff's constitutional rights. The court will grant the defendants' motion for summary judgment and dismiss this case. Because the court has dismissed the plaintiff's claims on the merits, it need not address the defendants' contention that they are entitled to qualified immunity.

## IV. Conclusion

The court **GRANTS** the defendants' motion for summary judgment. Dkt. No. 30.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of Judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend

this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 7th day of September, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**